The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Morning, counsel. Good morning, your honor. First case we'll call this morning is 4-21-0524, People of the State of Illinois v. Fred E. Cox. Could counsel for the appellant please state your name for the record? Sarah Curry from the State Appellate Defender. Thank you. And counsel for the appellee, could you please state your name for the record? It's Courtney O'Connor for our State's Prosecutor's Office. Thank you. Ms. Curry, you may proceed. Thank you, your honors. Fred Cox filed a pro se post-conviction petition alleging several claims of ineffective assistance of trial counsel, including erroneously acquiescing to the jury receiving the certified copy of conviction during deliberations, failing to object to improper closing argument by the admission of the video recorded interview of H.V. by Sgt. Rhodes. P.C. counsel was appointed and she filed a 651C certificate stating that there was not a substantial denial of Cox's constitutional rights because all the claims raised in the P.C. had been addressed by this court on direct appeal. However, this court had not addressed the substance of these claims. Rather, it had left them open, finding them to have been forfeited. By not amending Cox's P.C. to include a claim of ineffective assistance of appellate counsel, P.C. counsel failed to fulfill her duties under rule 651C, and Cox's subsequent waiver of his right to counsel was not knowing and voluntary, where it was based on P.C. counsel's erroneous assessment of his P.C. Moreover, at the time of trial, P.C. counsel represented the complainant's mother in obtaining an order of protection against Cox in regard to the allegations in this case, thereby creating a conflict of interest that was not sufficiently addressed by the trial court. Rule 651C requires post-conviction counsel consult with the petitioner either by mail or in person to ascertain his constitutional claims, examine the record of the trial court proceedings, and make any amendments to the pro se petition necessary to adequately present the petitioner's claims. Amending a petition to include a claim of ineffective assistance of appellate counsel is one of the specific amendments that P.C. attorneys must make when necessary. Here, on direct appeal, Cox challenged the certified copy of conviction being provided to the jury and challenged the prosecutor's closing argument and challenged the admission of the video of the interview with H.V. However, this court found each of these claims to have been forfeited. As such, Cox framed the issues in his P.C. as ineffective assistance of trial counsel in an attempt to avoid the forfeiture that this court found. But as a pro se petitioner, he failed to also raise the claims as ineffective assistance of appellate counsel. P.C. counsel should have amended the petition to include allegations of ineffective assistance of appellate counsel in order to adequately present Cox's claims. Remand is required regardless of whether the claims raised in the petition have merit. And noncompliance with rule 651c may not be excused on the basis of harmless error. The state claims that P.C. counsel reviewed the substance of the underlying claims and concluded that there was not a substantial denial of Cox's constitutional rights. However, the 651c certificate makes clear that counsel's determination that there was not a violation of Mr. Cox's rights was based solely on her assessment that the issues raised in the P.C. had been addressed by this court on direct appeal, which we know was not true. Moreover, the claims raised in the P.C. are not contradicted by the record and are not based on an invalid legal theory. So even if P.C. counsel had addressed the substance of these claims, she would have been wrong in determining that the substance of these claims were without merit. The certified copy of conviction was sent back during deliberations. It not only confirmed that there was a prior conviction for aggravated criminal sexual abuse, but it showed two prior convictions for aggravated criminal sexual abuse. It also showed the sentence, which was not relevant to the jury's determination. It showed probation, jail, and home confinement. And it showed that Cox pled guilty, which was also not necessary. It showed an admission of guilt, which was not necessary to their assessment of the facts. Prosecutorial misconduct. The prosecutor defined propensity by Miriam Webster and then went on to define it on its own with a lesser standard. The interview with Sergeant Rhodes was supposed to follow a certain protocol as set forth by the Child Advocacy Advisory Board. And during Rhodes' testimony at the hearing, it was unclear whether he followed this protocol. Thus, all of these issues are not contradicted by the record and are not pertaining to an invalid legal theory. For these reasons, P.C. counsel did not comply with Rule 651C, and she was unreasonable in her representation. Cox did subsequently waive his right to counsel. However, this waiver was not knowing involuntary where he was left with no choice but to either waive counsel or to represent himself if he wanted to further his claims. Cox knew that the claims that he raised in his P.C. were not dealt with on direct appeal by this court and had no choice to further his claims to represent himself. Moreover, P.C. counsel should have filed a motion to withdraw pursuant to Greer rather than just file a 651C stating that Mr. Cox's claims had no merit. And that would have sparked a conversation with the trial court about what these issues actually pertain to and if or not whether they had been assessed on direct appeal. As such, Mr. Cox's subsequent waiver of his right to counsel was not knowing involuntary and should not affect this court's determination that P.C. counsel acted unreasonably. Moving on, appointed P.C. counsel represented E.R., the mother of the complaining witness, H.V., in obtaining an order of protection against Cox while the charges in this case were pending. After the trial court failed to adequately investigate the conflict, the court said nothing more than, what do you want me to do? The court didn't ask any questions about the specificity of the conflict, about whether the conflict, the court didn't ask whether the order of protection was still in effect. The court didn't ask whether the complainant's mother was still represented by P.C. counsel. The court didn't ask any questions to ascertain the nature of this conflict other than what Cox set forth and the state did not disagree that this was a representation that had taken place and the state didn't know whether or not the, or didn't set forth any information that the representations did not still take place. The trial court's failure to inquire into the conflict requires reversal on its own, but regardless, the conflict was a per se conflict where counsel represented a person who had a contemporaneous association with the victim, the prosecution, and an entity assisting the prosecution. Ms. Curry, may I interrupt you for a moment? And just on that point, I know that in your reply brief, you suggest that we should interpret the word contemporaneous under these circumstances to include the entire period dating all the way back to when the order of protection proceeding began. The word contemporaneous, I mean, just in terms of its common meaning, means at the same time, right? Or occurring in the same time frame. Correct. So, if we're talking about just a time frame of what contemporaneous representation was going on in the order of protection proceeding, or do we even know that anything was still going on, you know, that same year or the year prior or the year prior to that? Because it had been initiated a long time before. Well, as I said, because of the trial court's failure to inquire further into the nature of the conflict, we don't know whether PC counsel still represented the complainant's mother. We don't know whether the order of protection was still in place, but I would posit that yes, contemporaneous means close in time, same time, but this is contemporaneous when you think about the proceedings as a whole. It's contemporaneous to the proceedings in this case, which were, yes, ongoing. Yes, it was six years earlier, but this was still the facts of this case were contemporaneous. What was happening was contemporaneous to the facts of this case, what was happening in this case, and that was still going on at the time as it was six years prior. It would be the representation that we look at to determine whether it was contemporaneous. And we were trial judges, former trial judges here, orders of protection have a limited lifespan, much shorter than six years. So are we to assume that this was a contemporaneous proceeding, that the order of protection proceeding was still going on and that counsel was still representing the victim's mother? Well, again, I would fault trial counsel for not following through with asking more questions. And in that case where a trial court does not ask the necessary questions to develop what the conflict entails, that requires automatic reversal. Let me interject that statement. Is that thinking muddled by the fact that at this point the defendant is progressing or proceeding pro se because the burden that you're placing is on the court to inquire further? It sounds to me based upon the record that the defendant was asked a broad issue with conflict to the court and then asked what remedy he was seeking and then indicated he was seeking no remedy. So what sort of duty and what authority do you have for this duty? Does the court have to further inquire? Well, I think we can all agree that the factual situation here is quite unique, but I would look to the Illinois Supreme Court's decision in Hernandez, which this court cited in Poole. And it was defense counsel's responsibility to bring the conflict to the attention of the trial court. And she should have done that as soon as she was appointed. And she did not do that. Is there anything in the record to suggest that she was aware or failed to make sufficient inquiry? Well, there's nothing in the record. And again, I would point us back to the trial court, not following up with any questions, but the state didn't seem surprised by it when Mr. Cox brought it up. And Mr. Cox seemed quite aware of the fact. So there's nothing in the record to say whether she was aware of it or not. But if she was, certainly it was her responsibility to bring it to the trial court's attention and not Mr. Cox's responsibility. And by the time he did bring it up, it was only one court date after he had, after PC counsel had withdrawn. Four months later. It was the next, but it was the next trial. Four months later. Court date. And he did bring it up. And four months after he had already made it very clear to the trial court that he wanted to represent himself. He, I would disagree with the fact that he made it very clear that he wanted to represent himself. He made it very clear that he didn't want PC counsel, appointed PC counsel to represent him because she was not going to represent him. He asked in the interaction. He did not request to proceed pro se. He did request to proceed pro se. He also brought up the fact was, would he be able to get another attorney? My point being, he wasn't necessarily gung ho on proceeding pro se. He did not want PC counsel representing him because she wasn't intending to represent him. She went through the entire admonishments on pro se representation, asked him each of the various questions. He responded in each instance that yes, he understood all that. And he still wanted to proceed on his own. I'm not disputing that. I'm only suggesting. So I'm trying to figure out what's the trial judge supposed to do? What more is a trial judge supposed to do when he's confronted with a defendant who says, I don't want this lawyer. I don't recall the transcript saying, I don't want this lawyer and I want another lawyer. I understand it to be, I don't want this lawyer and I want to proceed on my own. Now, are you sure you want to do that? Let me admonish you. And the court goes through the admonishments and he maintains throughout that conversation that no, he understands all that. And yes, he wants to represent himself. I'm trying to figure out what is the trial judge supposed to do under that circumstance? Read this guy's mind. Well, before allowing PC counsel to withdraw. The trial court should have asked or should have made further inquiry pursuant to Greer about what the basis of his PC was and why she believed that it had no value. Why she believed that his constitutional rights were not, there was no substantive violation of his constitutional rights. Had the trial court made any inquiry into that, it might have realized that she was wrong in her assessment of Mr. Cox's pro se petition that all of these issues have not been addressed. And if Mr. Cox knew that and knew that he has this attorney that's not going to do anything for him, he was left with no choice but to represent himself. Because if he had stuck with PC counsel, she wouldn't. Because when four months later, when he brings it up again, the court again says, well, do you want me to point you to other counsel? And he says no. Yes, but he did not, the trial court did not, which he was required to do when a conflict of interest arises, admonish the defendant about what the conflict could mean for him. There's no conflict anymore because she's not there. But at the time that he was represented by her, there was a conflict that nobody told him what the ramifications of that conflict were. And lo and behold, she subsequently files a 651C certificate saying that there's no PC, that there's been no violation of his rights, that all of his claims were raised on direct appeal, which was just not true. And so, yes, it was the next court date. And again, he said he didn't want an attorney, but he didn't have all of the information necessary to make those determinations. I think we're struggling, or I certainly am, with the idea that it's not clear that anyone was aware of a conflict at the time that counsel filed that certificate. Well, and again, the reason that we don't know the answers to those questions is because the trial court didn't ask any follow-up questions to determine the nature of the conflict. No, no, no. At the time that the initial admonishments with regard to defendant proceeding pro se, there was no information on the table about a potential conflict. Correct. You know, it's a step removed from the point in which the court was to take action having been made aware of a potential conflict. And at that point, defendant is pro se counsel. So, you know, I guess these things happen. Justice Harris mentioned that you've got trial judges sitting on this panel and things are brought to light at certain stages or different stages, and it's trying to find that nexus as to why the court had a further duty at that point and the defendant didn't have a duty as its own counsel to flush out that issue. Well, and just had the trial court asked a few more follow-up questions that we could have made more determinations, if it was determined that PC counsel did know of the conflict at the time she represented him and did not make that known to the court, then that would have shed a different light on the whole situation. But there were no follow-up questions. There was no inquiry into the nature of the conflict. And without that information, it's hard to say whether his agreement to continue pro se was valid. I understand, but it seems notable, though, the way the court conducted itself, essentially saying something to the effect of what do you want me to do? What's next? What's the remedy? And defendant says, I just wanted you to know. So the court's trying to get some information as to what to do next with this pro se defendant. And there is no remedy sought. He's a pro se defendant. He doesn't know. He doesn't know what he doesn't know. It's his election. He's chosen this course. This is what I have a hard time with. Well, he's chosen this course. And the court went to the nth degree to make sure he understood what this could mean. And he acknowledged he wanted to do that. Four months later, he raises this issue of a conflict. The court again says, well, do you want me to appoint alternate counsel? Do you want me to appoint a different attorney? No, he doesn't want that. And then we get to what Justice Kavanaugh says. Well, what do you want me to do? And he said, well, I just want you to know. He was not admonished about the nature of a conflict and what that could mean for representation of him. You're taking something from four months later and then somehow extrapolating it back to the last hearing where counsel was present. And somehow everybody was supposed to know at that hearing that four months from now, there's going to be a question raised about a conflict. So I need to be inquiring about this information that I'm not even going to know about for four more months. And even though I inquire about it, four months later, when I bring it up again, the defendant is going to say, hey, I just want you to know about it. No, I don't want another attorney. I want to represent myself. I mean, it borders on ridiculous, to tell you the truth, that you're asking a trial court to somehow figure something out in the past that is going to occur in the future. And even the future event doesn't require any remedy because the defendant, on his own, after having been fully admonished, says, no, I still don't want another attorney. I just want you to know about it. I can't envision any circumstance in which any trial court could be put to a burden beyond what it had in this case and reach the resolution it did. What do you want me to do, Mr. So-and-so? I just wanted you to know. OK. OK. And just to be clear, in regard to the initial waiver of counsel, I'm not arguing. This is why I raised it as two separate issues. The initial waiver of counsel, of course, the trial court would have no way of knowing about the conflict at that point. And that initial waiver was not knowing involuntary because it was based on the unreasonableness of PC counsel as a separate issue. What came up, the conflict came up after. And yes, that doesn't have anything to do with the initial waiver. It's just at that point, had the trial court asked further questions, there was the possibility that the conflict could have been fleshed out and maybe new counsel appointed if Mr. Cox had all of the information. All right. Thank you, Ms. Curry. You will have an opportunity on rebuttal. Ms. O'Connor. Thank you. Thank you. May it please the court, counsel. The state does ask its court to affirm the Nile defendant's post-conviction petition and affirm the lower court's findings. We do stand greatly on the brief. This is a defendant that continuously said, I want to proceed pro se. I want to proceed pro se. But then all of a sudden brings up, oh, but there was a conflict of interest. There really wasn't because his previous counsel at that time was not representing him and only briefly represented him. And the conflict that he's alleging dates back to an order of protection years ago that counsel did not represent the state and help with their case at all. It wasn't until his post-conviction phase that that counsel came and helped represent him. And she decided, hey, there's not a central denial here. I cannot, in good faith, amend his petition and go on with him. And he disagreed with her and proceeded to pro se. Like I said, we do stand on the brief. I think this issue here is pretty cut and dry that this is just a defendant that wanted to proceed pro se. But when the court wasn't agreeing with what he wanted, he decided to randomly bring up this alleged conflict of interest. That's really all we have here because it's just, for us, it's pretty cut and dry what happened here. And the state would stand on its brief. Thank you. All right. Thank you, Ms. O'Connor. Ms. Currie, rebuttal. Well, just to point out that I haven't heard any argument that all of the issues raised in Mr. Cox's pro se petition were not raised and dealt with on direct appeal. And counsel did violate Rule 651c by failing to amend his petition to include a claim of appellate counsel. And for that reason, this court should reverse the denial of his PC and remand for further post-conviction proceedings. All right. Thank you, counsel. Court will take this matter under advisement. Court stands in recess.